1

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Matthew M. Loker, Esq. (279939)
ml@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

2

3

4

5

6

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

7

**LAW OFFICE OF CLARK OVRUCHESKY**
Clark Ovruchesky (301844)
co@colawcalifornia.com
750 B. Street, Suite 3300
San Diego, California 92101
Telephone: (619) 356-8960
Facsimile: (619) 330-7610

8

9

10

11

12

13

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KELLIE GADOMSKI, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**

Plaintiff,

v.

**PATELCO CREDIT UNION,**

Defendant.

Case No.:

**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**

    1.) **THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.;**

    2.) **THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CAL. CIV. CODE § 1788, ET SEQ.; AND**

    3.) **CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE § 1785.1, ET SEQ.**

**JURY TRIAL DEMANDED**

*KAZEROUNI LAW GROUP, APC*
*245 FISCHER AVENUE, UNIT D1*
*COSTA MESA, CA 92626*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The United States Congress has also found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, ("FDCPA") 15 U.S.C. § 1692 et seq., to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses.

///
///
///
///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

3.   The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.

4.   There exists today in the United States a pervasive and fundamental misunderstanding about the long-term impact filing a consumer bankruptcy has on a consumer's credit worthiness. Specifically, many consumers believe that because a bankruptcy can be reported on their credit report for ten years their credit worthiness will be ruined for the same length of time. This is not true.

5.   The *majority* of consumer debtors who actually file consumer bankruptcy do so to ***raise*** their credit score and remedy their poor credit worthiness.

6.   It is entirely possible for consumer debtors to have over a 700 FICO Score within as little as 12 months after filing a consumer bankruptcy (Chapter 7 or Chapter 13).

7.   Creditors and lending institutions are aware of the misconception that filing a consumer bankruptcy destroys a consumer's credit worthiness for ten years.

8.   In an effort to perpetuate the aforementioned bankruptcy myth, creditors intentionally and routinely ignore credit reporting industry standards for accurately reporting bankruptcies and debts included in those bankruptcies in an effort to keep consumers' credit scores low and their interest rates high.

9.   Creditors know that by deviating from recognized credit reporting standards consumers will have difficulty raising their credit scores and improving their credit worthiness.

10. Plaintiff **KELLIE GADOMSKI** ("Plaintiff"), through her attorneys, brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies on behalf of herself and on behalf of all others similarly situated (the "Class" or "Class Members"), resulting from the illegal actions of Defendant **PATELCO CREDIT UNION** ("Defendant" or "PCU"), in negligently or intentionally systematically reporting negative and inaccurate information on consumers' credit reports, as that term is defined by 15 U.S.C. § 1681a(g), failing to properly investigate disputes concerning the inaccurate data PCU is reporting in consumers' credit files, and failing to correct such, which PCU knew or should have known was erroneous and which caused Plaintiff and the Class damages.

11. Plaintiff makes these allegations on information and belief, with the exception of allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

12. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

13. Any violations by PCU were knowing and intentional, and PCU did not maintain procedures reasonably adapted to avoid any such violation.

14. Unless otherwise indicated, the use of PCU in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of PCU.

15. Unless otherwise stated, all the conduct engaged in by PCU occurred in California.

### JURISDICTION AND VENUE

16. Jurisdiction of this Court arises pursuant to 28 U.S.C. §1331; 15 U.S.C. § 1681p; and, 28 U.S.C. § 1367 for supplemental state claims.

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

17.  This action arises out of PCU's violations of (i) the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq. ("FCRA"); the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788, et seq. ("RFDCPA"); and, (iii) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1 et seq. ("CCCRAA").

18.  The Court has personal jurisdiction over Defendant as Defendant conducts business within the State of California and has purposefully availed themselves of the laws and markets of the State of California and this district.

19.  Venue is proper in the United States District Court, Eastern District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of San Joaquin, State of California, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) PCU conducted business within this judicial district at all times relevant.

## PARTIES

20.  Plaintiff is a natural person who resides in the City of Tracy, County of San Joaquin, in the State of California.  In addition, Plaintiff is a "consumer" as that term is defined by: Cal. Civ. Code § 1785.3(b) and 15 U.S.C. § 1681a(c).

21.  Plaintiff is also a natural person from whom a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiff, and is a "debtor" as that term is defined by Cal. Civ. Code § 1788.2(h).

22.  Defendant PCU is a corporation, whose primary corporate address is in the County of San Francisco, State of California.

23.  PCU is a furnisher of information as contemplated by FCRA sections 1681s-2(a) & (b), which regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies ("CRAs"), about consumer transactions or experiences with any consumer.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

24. Plaintiff is informed and believes, and thereon alleges, that PCU, in the ordinary course of business, regularly, on behalf of themselves or others, engages in "debt collection" as that term is defined by California Civil Code § 1788.2(b), and is therefore a "debt collector" as that term is defined by California Civil Code § 1788.2(c).

25. Trans Union, LLC ("TransUnion"), Equifax Information Services LLC ("Equifax"), and Experian Information Solutions, Inc. ("Experian") are each a "consumer reporting agency" ("CRAs") as that term is defined by 15 U.S.C. § 1681a(f).

26. This case involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. As such, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

27. The causes of action herein also pertain to Plaintiff's "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(d), in that inaccurate representations of Plaintiff's credit worthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

**GENERAL CREDIT REPORTING INDUSTRY ALLEGATIONS**

28. Plaintiff alleges that PCU is familiar with credit reporting industry standards and subscribes thereto.

29. Plaintiff alleges that PCU understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if PCU reported in accordance with the

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1    recognized industry standard.

2    30.  Plaintiff alleges that all actions alleged herein by PCU was done knowingly,

3         intentionally, and in reckless disregard for credit reporting industry standards

4         in an attempt to purposefully undermine Plaintiff's ability to reorganize and

5         repair Plaintiff's FICO Score.

6    31.  In the alternative, Plaintiff alleges that PCU's actions were the result of reckless

7         policies and procedures that inevitably led to inaccurate, misleading, or

8         incomplete credit reporting.

9         **a.  FICO**

10   32.  FICO Inc. ("FICO") is a leading analytics software company with its principal

11        headquarters located in San Jose California. FICO has over 130 patents related

12        to their analytics and decision management technology, and regularly uses

13        mathematical algorithms to predict consumer behavior including credit risk.

14   33.  The FICO Score has become the standard measure of consumer credit risk in

15        the United States and is used in ninety percent of lending decisions.

16   34.  A FICO score consists of a three-digit number summarizing a consumer's credit

17        risk or likelihood to repay a loan. FICO periodically updates its scoring models

18        resulting in multiple FICO Score versions.

19   35.  Base FICO Scores range from 300 to 850, while industry-specific FICO Scores

20        range from 250-900. A higher FICO Score demonstrates lower credit risk or

21        less likelihood of default.

22   36.  Different lenders use different versions of FICO Scores when evaluating a

23        consumer's credit worthiness.

24   37.  There are 28 FICO Scores that are commonly used by lenders.

25   38.  A consumer's FICO Score is calculated based solely on information in

26        consumer credit reports maintained at CRAs.

27   39.  The three largest CRAs are Equifax, Experian, and TransUnion.

28

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

40. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

41. There are five key factors that a FICO Score considers: 1) Payment history; 2) Amount of Debt; 3) Length of Credit History; 4) New Credit; and 5) Credit Mix.

42. Each of the five factors is weighted differently by FICO.

43. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

44. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score.  Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

45. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

46. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

47. FICO Scores are entirely dependent upon information provided by Data Furnishers ("DFs") to CRAs.

48. The FICO scoring formula treats both Chapter 7 and Chapter 13 Bankruptcies similarly in terms of their impact on one's FICO Score. Specifically, both "Chapters" have the same level of severity with respect to their FICO Score and for both, FICO uses the FILING DATE to determine how long ago the

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

bankruptcy took place.

### b. Metro 2

49. The Consumer Data Industry Association ("CDIA") is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

50. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumers' credit history.

51. The Consumer Data Industry Association's ("CDIA") Metro 2 format is *the* credit industry's standardized, objective reporting format used by furnishers to provide information about consumer accounts to consumer reporting agencies.[1]

52. Therefore, the credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

53. The CDIA is *the* expert on accurate credit reporting. In support of this allegation, Plaintiff avers the following:

   a. The CDIA offers an FCRA certificate program for all CRAs

   b. The CDIA offers an FCRA awareness program for all CRAs.

   c. The CDIA offers an FCRA certificate program for DFs.

   d. The CDIA offers an FCRA awareness program for DFs.

   e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

---

[1] *See* Consumer Financial Protection Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System, available at:
http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

f.   The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and TransUnion.

g.   The CDIA developed a credit reporting resource guide for accurately reporting credit.

54.   The CDIA's Metro 2 is accepted by all CRAs.

55.   The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's Credit Reporting Resource Guide ("CRRG").

56.   The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

57.   The CRRG is not readily available to the public. It can be purchased online for approximately $229.45.ml

58.   Even if a buyer is ready and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

59.   When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

60.   The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

61.   If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower, a consumer will be considered a higher credit risk, resulting in less favorable lending terms.

62.   E-OSCAR is the web based Metro 2 compliant system developed by the CRAs that enables DFs and CRAs to create and respond to consumer credit disputes.

63.   When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification ("ACDV") via e-Oscar to the DF.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

64. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file, e.g. "Account Type - 07" (07 in Metro 2 refers to a Charge Account).

65. When a consumer files bankruptcy, certain credit reporting industry standards exist.

66. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.

67. The Consumer Information Indicator ("CII") is a critical *status* field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.

68. Under Metro 2, the CII must be reported only on the consumer to whom the information applies.

69. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

70. In the consumer bankruptcy context, CII Metro Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.

71. Such a reporting alert any potential lender that the account is no longer in a collectable status, but is rather being handled by a Chapter 7 trustee.

72. The CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

73. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

74. The lack of a CII reported status makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

75. The lack of an accurate reporting of the CII field also suggests that creditors are free to collect against a consumer per their pre-bankruptcy contract terms, which is inaccurate and materially misleading due to the effect of the bankruptcy orders, such as the automatic stay of section 362 of Title 11, that

exist to prevent post-petition collection activity, and the discharge order which enjoins post-discharge collection upon any *in personam* liability for a claim.

76. Therefore, failure to report the correct CII status indicator will prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

77. Under the FCRA, a bankruptcy can be reported for ten years.

78. The ten-year rule for reporting runs from the date the bankruptcy was *filed*.

79. A consumer's FICO Score is directly related to the date on which a petition is filed and acknowledged.

80. The more time that has passed since the filing of the bankruptcy, the less negative impact the bankruptcy will have on a consumer's FICO Score.

81. Failure to reference the bankruptcy filing and/or discharge in the CII field and/or the correct petition date shall result in a lower FICO Score resulting in those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

82. As explained in more detail below, PCU failed to reference the bankruptcy filing and discharge in the CII field in Plaintiff's Credit Reports in respect to a consumer credit account successfully discharged through Plaintiff's Chapter 7 Bankruptcy.

83. Instead, PCU reported that the *current* (pay) status of the debts were "Charged Off", i.e. still legally collectable, as opposed to "Discharged in Bankruptcy."

84. The "Charge Off" status reported by PCU, as opposed to the correct status of "Discharged in Bankruptcy", inaccurately and misleadingly suggested that Plaintiff still has a personal legal liability to pay the alleged Debt, which is the opposite effect of receiving a Chapter 7 bankruptcy discharge.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## GENERAL CLASS ACTION ALLEGATIONS

85. Plaintiff is among many thousands of persons in the United States who have filed bankruptcies pursuant to Chapters 7 and 13 of the U.S. Bankruptcy Code and who have been granted orders of discharge by a U.S. Bankruptcy Court. Under federal bankruptcy laws, such an order fully and completely discharges all statutorily dischargeable debts incurred prior to the filing of bankruptcies, except for those that have been: (1) reaffirmed by the debtor in a reaffirmation agreement; or (2) successfully challenged as non-dischargeable by one of the creditors in a related adversary proceeding. Plaintiff and the Class Members are persons for whom the debts at issue have been discharged through bankruptcy.

86. Defendant is a debt collector regularly engaged in the business of collecting consumer debts from consumers.

87. In the ordinary course of business, PCU's debtors who are enduring financial hardship fall behind on their payments of PCU credit accounts. Prior to the filing of any personal bankruptcies, PCU, its collection agencies and delinquent debt companies that purchase PCU's debt, act to collect these past due debts by threatening in dunning letters to place a "charge off" or other similar "past due" notations on the debtors' credit reports. Said letters threaten to ruin the debtors' credit unless they pay the past due debt. PCU, its debt collectors and delinquent debt companies that purchase PCU's debt also act to collect these past due debts by promising in dunning letters to remove the "charge off" or other "past due" notations on the debtors' credit reports to show that the past due debts have been paid if the debts are paid.

88. In the ordinary course of business, PCU issues reports to credit reporting agencies as to the current status of debts incurred by individuals whom PCU has extended credit. It is also an entity which regularly and, in the ordinary course of business, furnishes information to one of more credit reporting agencies about its transactions and experiences with consumers.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

89. PCU has knowledge of when its past due debts are discharged because it receives a discharge notice from the U.S. Bankruptcy Court.

90. Despite the fact that PCU has received notice of the discharge of each Class Member's debt to PCU, PCU has a deliberate policy of not notifying credit reporting agencies that debts formerly owing to PCU are no longer "charged off" or currently still due and owing because they have been discharged in bankruptcy. As a result of PCU's refusal to make such updates to credit reporting agencies, debts that have been discharged in bankruptcy are instead listed on Class Members' credit reports as "past due" and/or "charged off." These notations clearly indicate to potential creditors, employers, or other third parties that a Class Member still owes a debt and that debt may be subject to collection. These notations therefore adversely affect a Class Member's ability to obtain credit or employment and have the inherent coercive effect of inducing Class Members to make payment on the debt.

91. Moreover, PCU's failure and further refusal to update credit report tradelines for many thousands of consumers to reflect that their debts were, in fact, discharged in Bankruptcy, as opposed to reporting a *current* (pay) status of "charged off" or "past due", runs afoul to Section 727 of the Bankruptcy Code and *the* primary purpose of the protection offered by the Bankruptcy Code— the discharge of a debt. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007).

92. Many debtors whose debts have been discharged in bankruptcy have advised PCU, via an FCRA dispute, of its failure to update the information on their credit reports to show that their debts have been discharged through bankruptcy. Said debtors have requested that PCU remove the "charged off" statuses from their credit reports. PCU has refused to do so. Upon information and belief, PCU has a deliberate policy of refusing the debtors' requests to remove "charged off" and other similar "past due" *current* (pay) statuses from the PCU

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

debts that were transferred/sold prior to the filing of the bankruptcy from the debtors' credit reports. As a result, the credit reports of these individuals and of all Class Members incorrectly show their indebtedness to PCU to be legally collectible.

93. Upon information and belief, even in response to notices made pursuant to the FCRA §1681i(a)(2), from Class Members that information contained in their credit reports was inaccurate, PCU has refused to correct erroneous credit information despite its affirmative duty to do so under FCRA §1681s-2(b).

94. Upon information and belief, PCU also received many requests from the CRAs that PCU verify that the debt owed by Plaintiff and Class Members were discharged in bankruptcy, to which PCU responded to the debts were still due and owing, despite PCU's knowledge that such debts have in fact been discharged in bankruptcy.

95. PCU knew that the existence of such inaccurate information in the Class Members' credit reports would damage the Class Members' credit ratings and their ability to obtain new credit, a lease, a mortgage or employment, all of which may be essential to reestablishing their life after going through bankruptcy.

96. PCU has chosen not to advise the CRAs of the fact that the Class Members' debts have been discharged because PCU continues to receive payment either directly or indirectly on discharged debts. This results from the fact that Class Members, in order to obtain favorable credit or credit at all, often feel it necessary to pay off the debt despite its discharge in order to remove the inaccurate information from their credit reports.

97. This belief is intentionally reinforced by PCU itself when Class Members contact PCU asking PCU to correct the erroneous credit information. Not only does PCU refuse to make such correction, but it advises Class Members that, so long as the discharged debt remains unpaid, the charge off will remain on

their credit report for at least seven years. Thus, when a Class Member needs to rent a car, obtain employment or rent an apartment, or other similar transactions, and they are advised by PCU that it will not remove the erroneous information unless they pay the debt, Class Members often pay that debt despite the fact that it has been discharged in bankruptcy. Thus, PCU knows that it is obtaining repayment on debts that have been discharged in bankruptcy.

98. Class Members often believe that they must pay the debt in order to remove it from the credit reports because they are often advised prior to bankruptcy by PCU and collection agencies that, if their debt is marked as charged off, it will dramatically affect their credit rating and will severely impact their ability to receive credit in the future.

99. PCU has adopted a systematic pattern and practice of failing and refusing to update credit information with regard to debts discharged in bankruptcy because it sells those debts and profits by the sale. PCU knows that if the credit information is not updated, then many Class Members will feel compelled to pay off the debt even though it is discharged in bankruptcy. Thus, buyers of PCU debt know, and are willing to pay more for the fact that, they will be able to collect portions of PCU debt despite the discharge of that debt in bankruptcy.

100. Upon information and belief, PCU receives a percentage fee of the proceeds of each debt repaid to PCU and forwarded to the buyer of PCU debt. PCU therefore has a clear economic incentive to violate the CCCRAA; RFDCPA; and, FCRA.

101. Buyers of PCU consumer accounts that have been "charged off" and sold by PCU prior to a bankruptcy being filed know that, post-sale, PCU will refuse to correct the credit report to reflect the consumer's bankruptcy discharge, which means that the debtor will feel significant added pressure to obtain a "clean" report by paying on a discharged debt.

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT DI
COSTA MESA, CA 92626

---

**CLASS ACTION COMPLAINT FOR DAMAGES**

102. Although credit report tradelines list the PCU debt as "sold" or "transferred", they fail to identify the purchaser. Therefore, as far as the debtor is concerned, the only creditor to approach to correct the credit reports is PCU, which, as a matter of policy, refuses to correct them (while, in addition, retaining a percentage of payments sent to PCU by the debtor, as opposed to PCU's undisclosed buyer). This highlight further the perniciousness of PCU's systematic approach in refusing to correct such reports.

103. Reporting a debt to a credit bureau is a "powerful tool designed, in part, to wrench compliance with payment terms." *Rivera v. Bank One*, 145 F.R.D. 614, 620 (1993).

104. PCU's actions constitute a violation of 11 U.S.C. § 524(a)(2), which provides that a discharge in bankruptcy operates as an injunction against the commencement or continuation of an action, the employment or process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor.

105. Accordingly, PCU violated the FCRA and CCCRAA by failing to comport its credit reporting with the terms of the Bankruptcy Discharge under §§ 727 and 524(a)(2) of the Bankruptcy Code, which ultimately intentionally assisted in the collection of discharged debt by not correcting the Class Members' credit reports to reflect that the debt has, in fact, been discharged.

106. PCU's reporting was inaccurate and materially misleading due to the effect of Plaintiff's successful Bankruptcy Discharge, because:

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

"The failure to update a credit report to show that a debt has been discharged is also a violation of the discharge injunction if shown to be an attempt to collect the debt. Because debtors often feel compelled to pay debts listed in credit reports when entering into large transactions, such as a home purchase, it should not be difficult to show that the creditor, by leaving discharged debts on a credit report, despite failed attempts to have the creditor update the report, is attempting to collect the debt."[2]

107. PCU's conduct is in bad faith, is vexatious and oppressive and is done with full knowledge that it is in violation of the law.

108. As a result of a major class action settlement, the CRAs have agreed to revise their procedures to report all pre-bankruptcy debts as discharged, unless furnishers provide information showing that a debt was excludable from discharge. *White v. Experian Info Solutions, Inc.*, Case No. CV 05-01070 (C.D. Cal. Aug. 19, 2008) (lead case number).

109. Therefore, even the CRAs have acknowledged that the accurate and proper way to report the status of all pre-bankruptcy debts, like Plaintiff's and Class Members' debts, following successful Bankruptcy discharges of the debt, is "Discharged in Bankruptcy" (or the equivalent).

110. Despite this reform, there continue to be problems with improper reporting of discharged debts, including allegations that creditors have deliberately engaged in the practice to in order to pressure debtors to pay off discharged debts, and even refusals to correct the reporting after being requested to do so by the debtor.[3]

---

[2]   4 Collier on Bankruptcy, paragraph 524.02[2][B] (16th Ed. 3 2013), at page 524-23.

[3]   *See, e.g., Belton v. GE Capital Consumer Lending* (*In re Belton*), 2014 WL 5819586 (Bankr. S.D.N.Y. Nov. 10, 2014). *See also* Jessica Silver Greenberg, Debts Canceled by Bankruptcy Still Mar Consumer Credit Scores, N.Y. Times, Nov. 12, 2014. *Keil v. Equifax Info. Serv.*, 2014 WL 4477610 (N.D. Cal. Sept. 10, 2014) (in response to debtor's dispute, credit union stated its policy was to report all charged-off debts as unpaid, irrespective of bankruptcy discharge); *In re Haynes*, 2014 WL

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

111. Over the past several years, thousands of consumers have written dispute letters to the CRAs and PCU requesting that PCU correct their erroneous reporting of discharged debts as due and owing because those debts had, in fact, been discharged in bankruptcy. Upon information and belief, in response to such disputes, PCU frequently continued to falsely report those debts as due and owing, despite the fact that the bankruptcy court records show that the debts at issue had been discharged.

112. PCU's persistent refusal to provide updated credit information to the credit reporting agencies that Class Members' past due PCU's debts are no longer "charged off" or "past due" because they have been discharged in bankruptcy is knowing and willful and constitutes violations of the CCCRAA and FCRA.

113. As a direct consequence of PCU's grossly inadequate and inaccurate initial reporting and investigation practices and procedures, Plaintiff and the Class have been effectively denied the fresh start to which they are legally entitled under the U.S. Bankruptcy Code.

114. In each case described above, Plaintiff and the Class members' legally protected interests in being able to apply for credit based on accurate information have been violated, placing them at an increased risk of not being able to obtain valuable credit and in many cases adversely affecting their credit ratings. PCU's publication of false and potentially damaging credit information concerning the Plaintiff and the Class violates their statutorily mandated rights and has caused them particularized and concrete harm.

### ALLEGATIONS AS TO PLAINTIFF'S BANKRUPTCY

115. At all times relevant to this matter, Plaintiff was an individual residing within the State of California.

---

3608891 (Bankr. S.D.N.Y. July 22, 2014) (debtor alleged that creditor refused his request to remove charge-off notation from account discharged in bankruptcy).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

116. Furthermore, PCU conducted business within the State of California at all times relevant.

117. On or about April 23, 2013, Plaintiff filed for a no asset Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of California in Fresno. Plaintiff's case was assigned Case Number 13-bk-25655 (the "Bankruptcy").[4]

118. The obligations ("Debt") to PCU, which was a consumer credit card account, were scheduled and included in the Bankruptcy.

119. PCU, a creditor, received notice of the Bankruptcy filing on or about April 23, 2014 through a Court Certificate of Mailing with Service by the Bankruptcy Noticing Center.

120. On or about August 12, 2013, Plaintiff received a successful bankruptcy discharge.

121. PCU received notice of the Bankruptcy discharge on or about August 12, 2013 through a Court Certificate of Mailing with Service by the Bankruptcy Noticing Center.

122. PCU did not file any successful proceedings to declare their Debt "non dischargeable" pursuant to 11 U.S.C. § 523 *et seq.*

123. PCU also did not request or receive relief from the "automatic stay" codified at 11 U.S.C. §362 *et seq.* while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff for any of the underlying Debts in their pre-bankruptcy form.

124. Accordingly, the Debt to PCU was discharged through the Bankruptcy.

125. Further, while the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate for PCU to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court, including the initial Petition for Relief for Bankruptcy

---

[4] The District Court has discretion to take judicial notice of the documents electronically filed in the bankruptcy case. *See, Atwood v. Chase Manahttan Mortg. Co.* (*In re Atwood*), 293 B.R. 227, 233 n.9 (B.A.P. 9th Cir.2003).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1   protection, the automatic stay, and the Discharge Order (collectively the
2   "Bankruptcy Orders").

3   126. Reporting credit information to a CRA is a collection activity.

4   127. PCU either reported or caused to be reported inaccurate information after the
5   Bankruptcy was filed *and* discharged, in the form of reporting the *current*
6   account (pay) status of the Debt as being "charged off", as opposed to
7   "Discharged in Bankruptcy" (or the equivalent).

8   128. The derogatory information reported by PCU after the Bankruptcy was
9   discharged indicates to potential creditors that the Debt was somehow not
10   discharged in the Bankruptcy and Plaintiff was being actively delinquent in
11   respect to PCU's Debt, which is inaccurate and materially misleading reporting.

12   129. PCU's attempt to collect upon their respective Debt by reporting post-
13   Bankruptcy derogatory information on Plaintiff's Equifax and TransUnion
14   Credit Reports, which is a collection activity, was therefore inaccurate and
15   prohibited by the Bankruptcy discharge.

16   130. PCU's reporting of post-Bankruptcy derogatory information was also
17   inaccurate because a default on an account included in a bankruptcy can occur
18   no later than the bankruptcy filing date, at which point the accounts included in
19   the Bankruptcy were no longer collectable due to the effect of the automatic
20   stay and ultimate discharge.

21   131. Thus, by reporting post-Bankruptcy derogatory information, PCU effectively
22   reported: (1) Plaintiff was being financially irresponsible by failing to pay the
23   debt *after* the Bankruptcy was discharged; and (2) that Plaintiff's Debt was
24   more recently subject to collection than it really was, which is inaccurate and
25   misleading under the RFDCPA; FCRA and CCCRAA.

26   132. PCU's attempt to collect upon the Debt by reporting post-Bankruptcy
27   derogatory information on Plaintiff's Credit Reports, which is a collection
28   activity, was therefore inaccurate and materially misleading.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

133. PCU's reporting of post-Bankruptcy derogatory information was also inaccurate and materially misleading because PCU continued reporting information based on PCU's pre-bankruptcy contract terms with the Plaintiff, which were no longer enforceable upon the filing of the Bankruptcy and ultimate successful discharge, thereby rendering the disputed information inaccurate and materially misleading.

134. For decades, courts have recognized that when a bankruptcy discharge is granted, the order relates back to the date of filing the petition and relieves the debtor from personal liability as of this date.

135. This is because when a debtor voluntarily files for bankruptcy, the petition constitutes an "order for relief" under the particular chapter the debtor wishes to proceed per Bankruptcy Code 11 U.S.C. § 301(a)-(b).

136. When a debtor such as Plaintiff files a chapter 7 petition, Section 727(b) of the Bankruptcy Code provides that the discharge, when entered, applies to "all debts that arose *before the date of the order for relief*." In other words, the discharge relieves the debtor of personal liability for all prepetition debts.

137. Thus, in relation to the FCRA and CCCRAA, the discharge order rendered the information reported by PCU following the bankruptcy discharge inaccurate and patently misleading because the discharge order relieved Plaintiff from any personal obligation to pay PCU as of the date of filing the Bankruptcy petition—April 24, 2013.

138. Moreover, the derogatory, delinquent information furnished by PCU following the Bankruptcy Discharge was inaccurate and misleading because end users, including potential creditors, may interpret the reported information to mean that Plaintiff incurred new debt during the Bankruptcy or that Plaintiff reaffirmed the Debt with PCU notwithstanding the discharge.

139. However, Plaintiff did not incur new debt with PCU during the pendency of the Bankruptcy or reaffirm the Debt in the Bankruptcy.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

140. Further, the Consumer Data Industry Association's ("CDIA") Metro 2 format is the credit industry's standardized, objective reporting format used by furnishers to provide information about consumer accounts to consumer reporting agencies.[5]

141. Upon information and belief, Plaintiff alleges that PCU voluntarily chose to subscribe to the Metro 2 format in their credit reporting practices to credit reporting agencies.

142. Reasonable entities, including potential creditors, would have thus expected PCU to report in compliance with the Metro 2 format.

143. Upon information and belief, PCU has adopted the CDIA's Metro 2 CRRG as its standard instruction book in respect to credit reporting, which instructs furnishers to update the CII indicator status of accounts discharged in Chapter 7 Bankruptcies with an "E" notation, i.e. "Discharged in Bankruptcy."

144. Potential creditors familiar with Metro 2 standard credit reporting instructions would be misled by seeing PCU reporting a "Charged Off" *current* (pay) status in respect to the Debt, as opposed to "Discharged in Bankruptcy", to believe that Plaintiff incurred new debt during the Bankruptcy or that Plaintiff reaffirmed the debt notwithstanding the discharge, because PCU's reporting deviated from Metro 2 reporting instructions in this respect.

145. However, Plaintiff did not incur new debt with PCU during the Bankruptcy proceeding or reaffirm the Debt in the Bankruptcy.

146. Accordingly, by reporting this post-Bankruptcy derogatory information, PCU did not comply with the Metro 2 format.

///

///

///

---

[5] *See* Consumer Financial Protection Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System, available at:
http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf

147. Furnishers utilizing the Metro 2 reporting standard correctly is crucial because the Metro 2 system creates a uniform standard for the meaning given to each field provided, which fosters consistency in how furnishers formulate data to report to the credit bureaus, which ultimately leads to objective credit evaluations and scores.

148. Moreover, the FCRA imposes no requirement or mandate that a furnisher provide any information to a CRA. Indeed, the CDIA has repeatedly noted that the act of furnishing information to a CRA is completely voluntary.[6]

149. Pursuant to the Voluntary Undertakings Doctrine, found in the Second Restatement of Torts (Section 323 and 324), and as adopted by California, an undertaking once begun, which induces reliance of others for their own safety, cannot be discontinued without reasonable care to avoid increasing the risk.

150. The voluntary nature of credit reporting induces the affirmative duty by furnishers, pursuant to the CCCRAA and FCRA, to report accurately to the CRAs.

151. Credit reporting is done for the protection of other creditors extending offers of credit and for debtors being accurately portrayed to potential creditors.

152. Accordingly, once PCU made the voluntary decision to report Plaintiff's accounts, PCU was required to report accurately to the CRAs.

153. Plaintiff alleges that PCU did not comply with the Metro 2 reporting standards in respect to Plaintiff's account and reported inaccurately by failing to comport their reporting practices with the implication of Plaintiff's filing of the Bankruptcy and ultimate discharge.

---

[6] *See, e.g.,* Credit Reports: Consumers' Ability to Dispute and Change Inaccurate Information: Hearing Before the H. Comm. on Fin. Serv., 110 Congr. 50 (2007) (written statement of Stuart Pratt, President and CEO, Consumer Data Industry Association) ("not a single one of the more than 18,000 data furnishers has to provide a single record of data to our members").

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

154. Accordingly, PCU's non-compliance with the Metro 2 reporting standards constitutes an inaccurate or misleading statement under the FCRA and CCCRAA, because a furnisher that fails to comply with the uniform and objective Metro 2 reporting standards compromises the credit reporting system.

155. Deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the furnisher reported in accordance with the recognized industry standard.

156. Because credit reporting is a voluntary act, PCU's deviation from the Metro 2 format instructions—the industry standard and PCU's chosen method of reporting—constitutes an inaccurate or misleading statement, because those making credit decisions, who would expect that furnishers like PCU would adhere to the Metro 2 format, would view a *current* account status of "Charged Off" after a bankruptcy is discharged more negatively than "Discharged in Bankruptcy."

157. PCU's failure to adhere to the Metro 2 format would prompt those making credit decisions to draw a more negative inference from PCU's reporting of a *current* (pay) status of "Charged Off" than if PCU accurately reported "Discharged through Bankruptcy" because a "Charged Off" account status indicates that a debt is still legally collectable and a legally owed obligation.

158. Plaintiff subsequently learned that PCU's reported post-Bankruptcy derogatory credit information regarding the obligations on Plaintiff's credit reports, thereby causing erroneous and negative credit information in Plaintiff's credit files and damaging Plaintiff's creditworthiness.

159. As a direct and proximate result of result of PCU's willful and untrue communications, Plaintiff and the Class have suffered actual damages including, but not limited to, reviewing credit reports, sending dispute letters, attorney's fees, and such further expenses in an amount to be determined at trial.

160. As a further direct and proximate result of PCU's acts stated herein, Plaintiff and the Class incurred pain and suffering, was impeded in seeking necessary products and services from vendors, suffered humiliation, embarrassment, anxiety, loss of sleep, emotional distress, and defamation of character.

### THE PCU INACCURATE CREDIT INFORMATION
### RE: ACCOUNT NO: 1800…

161. In an Experian Credit Report dated November 13, 2016, PCU reported the following inaccurate, derogatory information for the above-referenced account number, as of July 2015:

- Status: "Petition for Chapter 7 Bankruptcy" (as opposed to "Discharged in Bankruptcy")

- Delinquent throughout 2014 and 2015, including "90 Days Past Due" as of June 2015 (which was nearly two years following Plaintiff's Bankruptcy discharge)

- "Filed Chapter 7 Bankruptcy on July 7, 2015" (Plaintiff actually filed her Bankruptcy on April 24, 2013).

162. Similarly, in an Equifax Credit Report dated November 13, 2016, PCU reported the following inaccurate, derogatory information for the above-referenced account number, as of October 2016:

- Current Status: "Charge-Off"

- Balance: $32,365

- Date Major Delinquency First Reported: 05/2016

- Charge-Off Amount: $33,156

- "CO" (i.e. Charged-Off) status notations throughout 2014-2016.

163. There was also no notation, status update, or any other indication in the tradelines as they were reported to Experian and Equifax that the Account was *discharged* in Plaintiff's Bankruptcy or even subject to bankruptcy in Plaintiff's Equifax Credit Report.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

164. Plaintiff's PCU accounts were included and discharged in Plaintiff's Chapter 7 Bankruptcy (filed on April 23, 2013 and discharged on August 12, 2013).

165. PCU's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

166. PCU received notice of the Bankruptcy filing, which listed PCU as a creditor for the Accounts, on or about April 24, 2013 through a Court Certificate of Mailing with Service by the Bankruptcy Noticing Center.

167. PCU also received notice of the Bankruptcy discharge on or about August 12, 2013 through a Court Certificate of Mailing with Service by the Bankruptcy Noticing Center.

168. Rather than using the bankruptcy information sent specifically to PCU that PCU knew or should have known existed, PCU chose to continue reporting inaccurately on Plaintiff's credit report.

169. Rather than using the publicly available Bankruptcy information that PCU knew or should have known existed, PCU chose to continue reporting inaccurately on Plaintiff's credit report.

170. Although it was "accurate" for PCU to report that the Account was previously "Charged Off" as a *historical* fact, it was inaccurate and materially misleading to report that the *current* (pay) status of the Accounts were "Charged Off", because the true and correct statuses of the Accounts were "Discharged in Bankruptcy" as of August 23, 2013.

171. There was also no notation, status update, or any other indication in the tradeline as it was reported to Equifax and TransUnion that the Account was discharged in Plaintiff's Bankruptcy.

172. Again, the Account in question was not subject to a reaffirmation agreement with PCU or a successful adversary proceeding brought by PCU, but rather it was successfully discharged through Plaintiff's Bankruptcy. Therefore, in all material respects, Plaintiff's "Charged Off" Account is an example of an incorrect status notation on her credit report that is suffered by all the Class

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Members.

173. Although PCU did not previously update the reporting of the Account since December 2012, which was before the Bankruptcy was ultimately discharged, by knowingly and willfully failing to update Plaintiff's Equifax and TransUnion Credit Reports to signify that the Account had been discharged in bankruptcy, PCU was noncompliant with 11 U.S.C. §§ 524(a)(2) and 727 of the Bankruptcy Code by failing to update and correct credit information to CRAs to show that the Accounts were no longer legally due and owing.

174. After all, PCU had knowledge of when the "Charged Off" Accounts were discharged because it received a discharge notice from the Bankruptcy Noticing Center. It therefore, has a duty under the Sections 524(a)(2) and 727 of the Bankruptcy Code to promptly notify CRAs of any updates and/or corrections to the information previously provided to such agencies and/or any additional information that is necessary to make the information provided by PCU to the CRAs complete and accurate.

175. Therefore, PCU's inaccurate and negative reporting of the Accounts in light of their knowledge of the Bankruptcy discharge was willful.

176. Through this conduct, PCU has violated Cal. Civ. Code § 1785.25(a) by furnishing information to Equifax and TransUnion, each a CRA, that PCU knew or should have known was inaccurate.

177. On or about November 2016, Plaintiff disputed PCU's reported information regarding the Debt pursuant to 15 U.S.C. § 1681i(a)(2) by notifying TransUnion and Equifax, in writing, of the incorrect and inaccurate credit information furnished by PCU.

178. Specifically, Plaintiff sent a letter, via certified mail, to TransUnion and Equifax (the "Dispute Letters"), requesting the above inaccurate information be removed.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

179. Upon information and belief, TransUnion and Equifax timely notified PCU of Plaintiff's dispute, but PCU continued reporting inaccurate, derogatory information.

180. PCU was required to conduct a reasonable investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.SC. § 1681s-2(b)(1)(A).

181. On or about December 2016, Plaintiff received notification from TransUnion and Equifax that PCU received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6) and were providing the results of the reinvestigation.

182. However, rather than remove all the above inaccurate and materially misleading, derogatory information from Plaintiff's report, PCU simply left inaccurate and materially misleading information on Plaintiff's report.

183. Specifically, PCU continued to report the following inaccurate and derogatory information for both of the Accounts on Plaintiff's Equifax and TransUnion Credits as of December 2016, which was over *three years* following Plaintiff's successful Bankruptcy discharge of the Account:

   • *Current* (Pay) Status – Charge Off

184. Following PCU's FCRA investigation, there was again no notation, status update, or any other indication in either of the tradelines that the Account was discharged in Plaintiff's Bankruptcy.

185. Therefore, end users, including potential creditors, would interpret that as of December 2016, which was the most recent date PCU reported on the Account, the "*Current* (Pay) Status" of the Account was "Charged Off", as opposed to "Discharged in Bankruptcy", which is inaccurate and materially misleading under the FCRA for the reasons discussed.

186. Upon information and belief, PCU's investigation was unreasonable. More specifically, PCU, should have discovered from its records, including Plaintiff's official Dispute Letters, the fact that PCU was reporting the Account status

accurately to Experian, and the Bankruptcy documents PCU received copies of from the Bankruptcy Noticing Center and were also publicly available to PCU, that the information PCU was reporting was patently inaccurate and materially misleading because it reported that the *current* (pay) status of the Account was "Charged Off" as of December 2016, as opposed to "Discharged in Bankruptcy."

187. A reasonable investigation would have also led to PCU consulting with the CRRG's Metro 2 instructions to determine the accurate and proper reporting of the current (pay) status of the Account, which would have revealed that PCU should have reported the CII status as "Discharged in Bankruptcy."

188. Instead, PCU "double-downed" on their original inaccurate and materially misleading reporting to Equifax and TransUnion by reporting that the current (pay) status of the Accounts, as of December 2016, was "Charged Off", as opposed to "Discharged in Bankruptcy" (or the equivalent).

189. Accordingly, PCU failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) by failing to remove and/or correct the disputed and incorrect information.

190. PCU failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

191. Due to PCU's failure to reasonably investigate, they further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

192. Plaintiff's continued efforts to correct PCU's erroneous and negative reporting of the Account by communicating Plaintiff's dispute with PCU were fruitless.

193. PCU's continued inaccurate and negative reporting of the Accounts in light of its knowledge of the actual error was willful.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

194. PCU's failure to correct the previously disclosed inaccuracies on Plaintiff's credit report was intentional and in reckless disregard of its duty to refrain from reporting inaccurate information. Accordingly, PCU willfully and negligently failed to comply with its duty to reasonably investigate Plaintiff's dispute.

195. PCU inaccurate and negative reporting damaged Plaintiff's creditworthiness.

196. By inaccurately reporting account information relating to the Account after notice and confirmation of its errors, PCU failed to take the appropriate measures as determined in 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

197. Through this conduct, Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations in connection with the collection of Plaintiff's alleged debt.  This section is incorporated into the RFDPCA by Cal. Civ. Code § 1788.17; thus, Defendant violated Cal. Civ. Code § 1788.17.

198. Through this conduct, Defendant violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, and legal status of Plaintiff's alleged debt. This section is incorporated into the RFDPCA by Cal. Civ. Code § 1788.17; thus, Defendant violated Cal. Civ. Code § 1788.17.

199. Through this conduct, Defendant violated 15 U.S.C. § 1692e(8) by communication false information to the credit bureaus regarding Plaintiff's alleged debt.  This section is incorporated into the RFDPCA by Cal. Civ. Code § 1788.17; thus, Defendant violated Cal. Civ. Code § 1788.17.

200. Through this conduct, Defendant violated 15 U.S.C. § 1692e(10) by using false representations and deceptive means to collect Plaintiff's alleged debt.  This section is incorporated into the RFDPCA by Cal. Civ. Code § 1788.17; thus, Defendant also violated Cal. Civ. Code § 1788.17.

201. Through this conduct, Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect Plaintiff's debt.   This section is incorporated into the RFDPCA by Cal. Civ. Code § 1788.17; thus, Defendant also violated Cal. Civ. Code § 1788.17.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

202. Through this conduct, Defendant violated 15 U.S.C. § 1692f(1) by collecting an amount from Plaintiff not permitted by law. This section is incorporated into the RFDPCA by Cal. Civ. Code § 1788.17; thus, Defendant also violated Cal. Civ. Code § 1788.17.

## CLASS ACTION ALLEGATIONS

203. Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated (the "Class").

204. Plaintiff seeks to maintain this action as a class action representing a class consisting of the following:

> All individuals who, on or after February 2012 have had a consumer report relating to them prepared by any of the credit reporting agencies in which one or more of their PCU tradeline accounts or debts was not reported as discharged despite the fact that such debts had been discharged as a result of their bankruptcy under Chapter 7 and Chapter 13 of the Bankruptcy Code.

205. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

206. Ascertainability / Numerosity: This class is ascertainable in that it is comprised of individuals who can be identified by reference to purely objective criteria contained in the records of PCU and the various credit reporting agencies. PCU and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the hundreds of thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

207. Typicality: The claims of the named Plaintiff are typical of the claims of each member of the Class they seek to represent because: (1) they all had debts owed to PCU that were discharged in a Chapter 7 or 13 bankruptcy; (2) they have all been injured by PCU's refusal to remove the notation "charged off" or "past due/charged off" or similar notations despite the fact that the debts have been discharged in bankruptcy; and (3) each of their claims is based upon the same legal theories, i.e. that PCU violated the FCRA and CCCRAA.

208. Adequacy of Representation: Plaintiff is an adequate representative of the Class she seeks to represent because: (a) she is willing and able to represent the proposed class and has every incentive to pursue this action to a successful conclusion; (b) her interest is not in any way antagonistic to those of the other Class Members; and (c) she is represented by counsel experienced in litigating significant consumer issues, including the issues specifically raised in this action.

209. Commonality: There are several questions of law and fact common to all members of the Class. The primary question of law and fact that is common to all members of the class is whether PCU, in failing and/or refusing to update and correct the credit reports of Class Members, has acted knowingly and willfully in violation of the FCRA and CCCRAA.

210. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce PCU to comply with federal and California law. The interest of Class members in individually controlling the prosecution of separate claims against PCU is small because the maximum statutory damages in an individual action for the alleged violations are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

211. PCU has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE FAIR CREDIT REPORTING ACT

### 15 U.S.C. §§ 1681 ET SEQ.

### [AGAINST PCU]

212. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

213. The foregoing acts and omissions constitute numerous and multiple willful, reckless, or negligent violations of the FCRA, including, but not limited to, each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

214. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from PCU.

215. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from PCU.

### COUNT II

### VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

### Cal. Civ. Code §§ 1788-1788.32 (RFDCPA)

### [AGAINST DEFENDANT]

13. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

14. The foregoing acts and omissions constitute numerous and multiple violations of the RFDCPA.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

15. As a result of each and every violation of the RFDCPA, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from each Defendant individually.

**COUNT III**

**VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT**

**CAL. CIV. CODE § 1785.1 ET SEQ.**

**[AGAINST PCU]**

216. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

217. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

218. In the regular course of its business operations, Capital routinely furnish information to credit reporting agencies pertaining to transactions between PCU and PCU's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

219. Because PCU is a partnership, corporation, association, or other entity, and is therefore a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), PCU is and always were obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if they knew or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a). PCU knew or should have known that Plaintiff's debt was discharged. Thus, PCU violated Cal. Civ. Code § 1785.25(a).

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and The Class Members pray for judgment as follows:

- Certifying the Class as requested herein;

- Providing such further relief as may be just and proper;

- An award of actual damages, in an amount to be determined at trial, pursuant to 15 U.S.C. § 1692k(a)(1);

- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1788.30(a);

- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A);

- An award of statutory damages of $1,000.00, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

- An award of statutory damages of $1,000.00, pursuant to Cal. Civ. Code § 1788.30(b);

- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c);

- An award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d);

- An award of punitive damages pursuant to Cal. Civ. Code § 1785.31(a)(2)(A);

- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3); and

- For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b);

- That the Court preliminarily and permanently enjoin Defendant from engaging in the unlawful debt collection and credit reporting practices stated herein;

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

- Any and all other relief the Court deems just and proper.

Dated: March 29, 2017                                    Respectfully submitted,

                                         KAZEROUNI LAW GROUP, APC

                                         By:   /s/ Matthew M. Loker
                                              MATTHEW M. LOKER, ESQ.
                                              ATTORNEY FOR PLAINTIFF

### TRIAL BY JURY

220. Pursuant to FED. R. CIV. P. 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 29, 2017                                    Respectfully submitted,

                                         KAZEROUNI LAW GROUP, APC

                                         By:   /s/ Matthew M. Loker
                                              MATTHEW M. LOKER, ESQ.
                                              ATTORNEY FOR PLAINTIFF

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626